thank you please have a seat everyone we're delighted to hold court here in our hometown of Oklahoma City and we're delighted to have two Mrs. Bagarax and Ms. Gutowski on the front row we ask for no heckling please from the front row and I'm also delighted to have my two wonderful friends from Kansas Judge Federico and Judge Morris making the trek here as well as counsel making the unusual arrangements including getting on the turnpike awfully early this morning we have three cases that we'll hear this morning the first case is United States versus Harper and we'll hear first from Miss Johnson good morning my name is Jamie Johnson I'm an assistant federal public defender in Phoenix Arizona and I'm here today on behalf of Mr. Elja Harper Elja Harper was convicted at trial for offenses each of which required the jury to find beyond a reasonable doubt he was an Indian person but the only evidence the government introduced at trial that Mr. Harper had some degree of Indian blood and that he was recognized as an Indian by a federally recognized Indian tribe was a letter signed by someone named Terry Stevens who was not present or even mentioned at trial the letter was dated 19 days before trial and described events that had taken place decades earlier the letter was hearsay not subject to any exception and Mr. Harper's convictions must be vacated and the case remanded for a new trial as to all counts. Federal Rule of Evidence 8036 which is the business records exception does provide for the admissibility of business records into evidence as an exception to the hearsay rules but importantly it provides for admissions of the records themselves and not a letter or another Federal Rule of Evidence 8036 itself makes that clear it says that a record of an act, event, condition, opinion, or diagnosis is admissible as an exception to the hearsay records. There were no business records introduced at trial. This letter was produced in anticipation of litigation. As I mentioned it was dated 19 days before trial began. It was clearly produced in order to be used at trial. Was there anything produced other than that? Was anything listed as an exhibit other than this? For instance, did they ever list the underlying document itself? The certificate of blood quantum? Did they ever list that as an exhibit? So I was not the trial counsel in this case. Certainly the CDIB was not introduced into evidence at trial. As to whether that was ever put on an exhibit list I'm unaware of that fact. I don't believe so but certainly it was not introduced at evidence at trial. It was not before the jury and the jury was not anything that the jury considered in connection with its deliberations and that document should have been available because absent production of that document there was no basis to admit this summary of what it purported to say. Counsel may ask, a moment ago you said the only evidence was this letter that was signed by Mr. Stevens but what about the testimony of Ms. Folks? So she was the 902-11 affiant and who signed the certificate but after the exhibit was admitted into evidence as I reviewed the record the prosecution asked her questions about the contents of the letter and she testified as to what was in the letter and so her testimony was not objected to. It itself is evidence it's in the record so even if we were to say that the exhibit itself the document was admitted in error why would her testimony though be sufficient then as we evaluate for harmless error? As your Honor observed she did testify as to the contents of the document but all she did was read the document she didn't provide separate testimony she was asked what the document said. There had already been a hearsay objection made as to the introduction of that document. The objection was overruled and so at that point I don't think that there was any basis for an objection to having her read the document into evidence which is basically all that she did. So I think that her testimony was was derivative of the document itself as to which there was a preserved hearsay objection. And we've cited for the case for the court a number of cases that support the proposition that testimony about a document or excuse me about business records is not a substitute for admission of the records itself. We have the two cases from the Fifth Circuit one from the First Circuit and then an unpublished case for the Eleventh Circuit that held that it was plain error to permit testimony about business records when those business records were not themselves introduced into evidence. As I understand it we don't really have to address those out-of-circuit cases because those are talking about the answer to Judge Federico's question right whether or not if we were to take the testimony about the verification letter as substantive evidence to support the content of those of the I think is just more basic and fundamental. The government presented this verification letter. It was prepared in anticipation of litigation. It wasn't prepared in the in the ordinary course of business. It's not a business record. That was the purported basis for admission and therefore it's error, right? I think we are certainly making that argument. I think that we are also making the other argument that testimony about and we would say whether that's in the of a letter that goes to the jury or oral testimony about the contents of the record would be equally as inadmissible under the rules. Okay. So if there are no other questions about the letter I can move on to our next issues. And I assume we need to reach the issue about Dr. Loftus if we reverse on your hearsay argument since you've asked us to remand for a new trial and presumably Judge Heil is going to readdress the issue about the invincibility of Dr. Loftus' testimony, right? It may be prudent to do so, although certainly it's not necessary in order to reverse the convictions. I will note actually, so Judge Heil didn't end up being the person... Judge Murphy. Judge Murphy. Judge Heil was the judge who issued the order exceeding the testimony but then the case was transferred to an out-of-district judge. So the district court in evaluating whether the testimony of Dr. Loftus was admissible used an incorrect legal standard. Instead of performing a Daubert analysis, the court misread this court's decision in Rodriguez-Felix as providing a list of elements or a list of factors, all of which must be met before any testimony about eyewitness testimony. And you're predicating that on Judge Murphy's statement of at the end of this litany after the disjunctive cross-racial identification, etc., where he said these are not the circumstances that are present here. And that's where you're hanging your hat on his misreading of precedent, right? Yes, I think, and it's actually Judge Heil who issued this order before the case got transferred. I know it's a little bit confusing. I think that there were two fundamental errors of law in the order. Number one is that it read that list of examples in which expert testimony about eyewitness identification might be useful as a list of factors, each of which must be met in order for the testimony... How do you know that's what he meant? Well, it appears to be what he said, because two of the factors were met. He acknowledged that two of the factors that were actually met in this case, it was a cross-racial identification, it was an identification of distress. Okay, you said that in your brief, that struck me. So are you acknowledging that he had Indian blood? As a matter of fact, he was consistently referred to in the trial as a black man. Okay, so your argument is that he was black and the victim was white. Okay, let's say I am a Caucasian and I have a black man that works for me for a year. Is that really what Rodriguez was talking about, where I know the person, the person knows me, we have basically a daily relationship? Or was Rodriguez, presumably, just as a matter of common sense, talking about cross-racial identification of someone who is unknown to the victim? Your Honor, I think that that would be a fair inquiry, had that been the inquiry the district court made. But it didn't. Instead, it simply said, you know, this is a cross-racial identification, it made a factual finding that a cross-racial identification was present here and that that factor was therefore met. And then it acknowledged that identification under stress was also present here and excluded the testimony because the third factor, identification after a period of time, or the third circumstance in which this court has said it would be helpful, identification after a period of time, was not met here. And so I think that what we're asking is for a deliberate analysis. I'm using the correct legal standard. There was more to that decision than just the application of the Rodriguez-Felix factors. It seems to me the district court used that phrase from Rodriguez-Felix about there being an evidentiary cornucopia of evidence identifying this defendant, and the primary one being, as Judge Bacharach mentioned, this, the victim knew him well. He had been doing work at her home for some time. He'd been working for the neighbors. They also identified him. When she called 911, immediately after the attack, she identified him by name. He seemed to be saying, almost like this takes it out of the whole thing, he is Rodriguez-Felix factor analysis. Judge Moritz, I agree with you that those are things that could be considered in determining, for example, whether Dr. Loftus' testimony was matched to the facts of this case, but that doesn't appear to be, from my reading of the opinion, what the district court actually did. The term evidentiary cornucopia was used by this court in determining that the exclusion of the testimony, even if it had been erroneous, would have been harmless. And harmless error is not a standard that district courts should use in their initial analysis of whether testimony is admissible or inadmissible. So the factors that you've cited, I agree that those are things that on remand a district court could consider in determining whether this testimony would be helpful to the jury or unhelpful to the jury, but I think that the district court needs to perform that analysis in the first instance, and I don't think that it was done here. And the error in excluding that testimony was compounded by the error in admitting testimony from the law enforcement, unnoticed expert testimony from the law enforcement witness about the effects of trauma on memory and where memory is coded in the brain, and I think left the jury with an unfair impression that individuals who are making identifications under stress might actually be better at identifying people than otherwise. And so these kind of work together, and I think that's where the prejudice and the harm in our case comes in. Well, the court did appropriately go to harmless error on that issue, didn't it? You're talking about the SANE nurse? The SANE nurse, yes. And her testimony about memory, the effects of trauma on memory, and it seemed to me that the court made a pretty specific decision about this being harmless error. I say, I mean, the court didn't, but I mean, he rejected. I'm getting mixed up here, so I apologize. I guess I should ask you, why isn't this harmless error? I think it's not harmless error because it works in conjunction with the exclusion of Dr. Loftus to leave the jury with, I think, an unfair, incorrect, and misleading impression about how trauma and memory and stress interact together. But that all went to identity, didn't it? Wasn't that the real issue, was whether she properly identified him as the assailant? And so doesn't that just all go back to that cornucopia of evidence that we have of his identity? I think it went to the issue of whether she correctly remembered who the assailant was, because Mr. Harper never, or did not deny being present at her house. He told the authorities that he arrived, found her already injured, thought he might be blamed, panicked, and left. And so the issue was whether it was possible under the circumstances that she had conflated her memory of him coming to the house with her memory of who attacked her, and had correctly identified him to law enforcement as someone who had been at her house that day, but incorrectly identified him as her assailant. I see I have 45 seconds left. I would like to reserve the remainder of my time unless there's another question. Robert, let's stop our clock at 45 seconds. Judge Federico, do you have any questions? No. Okay. Thank you. We'll hear from the government. Good morning, Your Honors. May it please the Court, Lena Elam of the United States. I'd like to start by correcting what I believe is an error in the appellant's reply brief. Specifically, the appellant's reliance on the advisory committee note to the definitions rule 1001 cites that rule as a note to section 1001D. However, if you look at the advisory committee note, it actually says, that they are referring to, it says note paragraph four. That's interesting because 1001 has five lettered paragraphs, not numbered paragraphs. But the explanation to this is that the advisory committee note is from 1972, and that when the rule was originally adopted in 1975 under public law 93595, it had four numbered paragraphs. The first was writings and recordings. The second was photographs. The third was originals. And the fourth was duplicates. And so the commentary, the note that they rely on, talks about the definition of what a copy is. And it refers to paragraph four. That makes sense because the original paragraph four was about duplicates. Paragraph three, the original paragraph three, which is now subparagraph D, is about originals. And so all of the notes that they cite about what cannot be an original, such as a manually produced copy, pertains not to the definition of what's an original, but to what the definition of a copy is. Is the implication of why any of that matters your assumption, or I assume, that a verification letter is somehow a copy of a completely different set of documents, the CIDB records? Typically, if you go to, say, our clerk's office, and you tell the clerk, you know, I want a certified copy of a document, you get a certified copy. There's really no controversy over what's a copy. Now, if I go in and, you know, I take notes, and I say, okay, well, this is what the document actually says, well, that's no longer a duplicate or a copy under any definition, under the rules, under Webster's or Black's. That's Bob Bacharach taking notes, just like this verification letter. That's true, but it's not relevant for two reasons. First, we're not arguing that this is a copy under the definition 1001E. The definition of an original in 1001D says, an original of a writing is the writing itself or any counterpart intended to have the same effect by the person who executed or issued it. And in the context of electronically stored information, it says the record or the writing is any printout or any output readable by sight if it accurately reflects the information. Okay. Bob, you said the certificate and comparing it to electronically stored information, but my understanding is these certificates are physical objects kept in a vault, right? I think that depends on what we're talking about. There are actually two sources of the information, or there are two potential sources of the information that are pulled into that record. Ms. Oaks testified that the CDIB records are kept in the vault. She did not testify, nor was she asked, either on direct or cross-examination, what form the tribe's membership records take. It's not in the record, obviously, because she wasn't asked, but to the extent that the district court admitted this tribal verification letter, it would not have abused its discretion in concluding that the tribe kept electronic records of its membership of the 30... Wouldn't the district court not have abused its discretion if there was no testimony to support that? Ms. Oaks testified that she produced this letter from the membership records. The court could... She didn't even sign it. Well, if you look at the letter, and this is actually the second part of my answer to Judge Bacharach's question, although she says she prepared it, she didn't say she typed it out. That letter has the indicia, including the electronic signature, including the file path, that suggests what it is is a mail-merged document, an electronically produced letter. Just to clarify, are you now talking about the Terry Stevens letter, to whom it may concern? Yes, and in particular... And you say that's an electronic signature and has the indicia of an electronic document? That's precisely what I'm suggesting, is that from the database of tribal membership information, which we can agree, I think, is a record, that this letter was generated, and is typically generated in the course of the tribe's regularly conducted activity, that they generate these letters pulling that information electronically from the database and putting in... They type in the name, and it spits out a letter that says this person got a CDIB card on this date, was enrolled as a member of this tribe on this date, and it pulls the electronic signature of Ms. Oaks' boss, Terry Stevens, the director of CDIB and membership out of the Choctaw Nation. But what business duty did Terry Stevens have to generate this letter other than to prepare it for purposes of this trial? We don't... Although the temporal link perhaps suggests that it was prepared for this trial, there's no record that says that. But more to the point, these letters are produced all the time by tribal nations to prove eligibility for health care, for instance the glasses that Mr. Harper was seeking. There are any number of reasons that the tribe provides these letters. They are not provided simply for the purposes of identifying an individual as an Indian for purposes of federal prosecution. And had the defense chosen to cross-examine Ms. Oaks about this, they might have learned that that's how that those letters are produced for all kinds of reasons, not just for litigation. But she didn't say that affirmatively during her direct exam. You're arguing all these other purposes in which these letters may be generated to determine eligibility. Yes. But that's not in the record. Right. But what is in the record is Ms. Oaks testifying that she herself generated this letter and prepared the certificate which states that this letter was produced in the regularly conducted activity of the nation and that the making of the record was a regular practice of that activity. Satisfying 803.6. The court did not abuse its discretion in crediting Ms. Oaks' testimony that she prepared a certification that met every element of the 803.6 analysis. Significantly. This is such an interesting argument and I'm trying to untangle it. So your argument is that this verification letter is somehow interpreted as an original of the CIDB records, a distinct set of documents. That's not exactly what my argument is, Your Honor. And in fact, I think there are two ways that the district court could have admitted this letter properly. One is similar to what you're saying. It's actually that this letter is an original of the membership records, the Choctaw Nation's membership records which contain both the documents required to become a member of the Choctaw Nation and the membership information itself. So that... But the verification letter is somehow the same thing as this distinct set of documents. Because it is an output readable by sight that accurately conveys the information. Well, can you talk about the case that you relied on for that? It isn't anything similar to this. I think it was Shannon. Shannon, yes. That's the only case she relied on that I could see and it's nothing like that. And Shannon, interestingly, doesn't... It briefly talks about 1001 but what it effectively says is the business records exception applies to records kept in one form even if they're presented in another. And so the principle is the same here but the facts are different. But if we remember that this is an abuse of discretion standard the question is would the district court have abused its discretion in looking at this letter noting the indicia that had been electronically prepared from a database the membership information whether that would have been an abuse of discretion. The alternative argument here is that the letter is a record itself. And I think for purposes of that... Well, we know it's a record but is it a record that's visible? Sure. It's a record that ostensibly is hearsay Well, and so under 8036 I think the important thing to remember is 8036 applies to a record of an act an event a condition an opinion or a diagnosis. This record contains two dates and some of the discussion about whether this is accurate whether it complies with element 1 of 8036 is whether it was made at the time. In 2002? Obviously it was not made in 2002 when Mr. Harper got his CDIB card. It was not made in 2011 when he became a member of the Choctaw Nation. But it was made at or near the time of the condition that is the primary issue in this case which is of Mr. Harper's tribal status. Was his condition a member of the Choctaw Nation at the time the letter was prepared was he a member of the Choctaw Nation who had some degree of Indian birth and that's why the letter satisfies 8036. What about 2? It was kept kept in the course of the tribe's regularly conducted activity. Yes. How was this kept? I mean I think what you're saying it was generated for the segregation and it's normal for the tribe to generate this type of  when there's any issue about Indian status. That's different than saying that the tribal membership was kept in the course of the tribe's regularly conducted activity. Certainly the tribal membership information. Litigation is not regularly conducted activity. But the production of tribal verification letters themselves are regularly kept by the tribe for purposes such as  whether an  is eligible for healthcare for social services for all kinds of things. These letters are regularly kept. These aren't records that are kept in the course of a regular business activity. These are letters that are generated when they're needed for some outside purpose. And that's why we turn to the second way to establish that this record was properly admitted. Under the definition of an original under 1001D, this was both any counterpart intended to have the same effect as the original by the person who executed or issued it. Issued in this case is Tabitha Oaks and she intended that that letter had the same effect as the underlying record. It is an original  The district court would not have abused its discretion in concluding that this was a this came from electronically stored information and qualified as any output readable by sight that accurately reflected the  And Ms. Oaks'  adequately established that. I want to close by talking just briefly about Wood and why this case is different than  In Wood, the motivating issues behind the court's opinion were two. That the  deprived the defendant of the opportunity to challenge non-frivolous complaints about the  verification letter and the accompanying certification because the government did not timely provide the 90211 certificate or call a witness to allow the defendant to attack that letter. Here the government did both. The government timely provided the tribal verification letter and the accompanying certificate and called the custodian of records for the Choctaw Nation who testified that she queried those records and prepared a letter providing that information. Was that letter signed by Terry Wood from the CDIB and membership department? Yes. Did the defense have an opportunity to question her about that? Absolutely they did. But Counsel in Wood, it appeared, it wasn't clear to me necessarily from our opinion, but they referred to what the tribe actually produced as the Indian blood certificate plus a certificate of authenticity  what we don't have here and the certificate of authority,  which is what we do have here. Unfortunately we don't have the  document. It seems to me that at least in Wood, yes the issue was definitely notice, but that's because they actually had the underlying document. Your Honor, I see my time is expiring. May I address that question? I think the problem here is sort of the incongruity and the lack of clarity about what a tribal status document looks like. And in Wood, it was a different tribe. And when we say the tribal certificate or the tribal status certificate, that is not a certificate that is kept somewhere at the tribe. And again, I can't remember which tribe it was in the case of  But the records aren't a stack of certificates where you hand over, this is my tribal status certificate. Instead, the only way to prove the tribal status of an individual who is a member of the tribe is to query these records that are kept on a computer and provide to the Social Security Administration. She testified, Ms. Oaks, that they were in the  What did she mean? I know you're  between the blood records and the  Yes. And I think that's a key distinction here. The CDIB records are issued by the tribe for the Bureau of Indian Affairs. And that may well be, and I think my point is  a fault and that's what's being produced and that's what should have been produced. But that wouldn't be sufficient to meet the tribal status record. No, but you didn't even do that. Well, what we did was produce the information that's kept in the tribe's  records, which encompasses both the defendant's certificate of Indian blood and their pre-conducted activity of the tribe and that information, that record is made regularly in the course of that activity. That information coming from the tribe's  whatever form it's presented in, if particularly here where a witness is presented and can be asked and given the       defendant the opportunity to make the showing in 803.6.5 whether this information, either the source of  or the making or the preparation of the record is untrustworthy. That is what 803.6.5 allows, is the court here could have excluded this record had the defense taken this opportunity to make    the case  question Ms. Oaks and say, wait, this was signed by someone else. Hey, where did you get this record? This record doesn't have the indicia of trustworthiness that's required to admit a business record under 803.6. And for that reason, we think this record was properly admitted either independently as a business record or as an independent record. All right. Thank you. Robert, let's give the petitioner an additional 45 seconds. Thank you. The government bears the burden of  that an exception to the hearsay rule applies. There is no basis in this record to determine       that this was electronically stored information to which rule 101D would apply in any way, shape, or  With all respects to Ms. Alum, the extra outside-the-record comments about how these records are used and what they are, are not evidence. They were not before this court. I, myself, am an enrolled member of this tribe. I have a  It's a physical document. I don't know if that's what's held in their vault, but these physical documents do exist, and there's no basis in the record for finding that they do not. With respect to the certification, the certification letter actually does not state that the certification of authenticity that was attached, it does not state that this letter was produced in the regular course of  When asked to identify what records it's certifying, it lists the tribal enrollment number. It doesn't list the letter. And so I don't think that this certificate can be used as a basis for finding that the business records exception is met with respect to this letter. It doesn't purport in its face to do that. The Judge Morris is correct. The rule requires that the records be kept in the ordinary course, not that they be produced in the ordinary course. I'm sure that the tribe does produce letters for all sorts of reasons at all sorts of times, but for admission against the defendant in a criminal trial, it does not necessarily have to be one of those reasons. It's not listed as an exception under the hearsay rules. All right. Thank you. This matter will be submitted. Thank you, counsel, for both sides, which both of you presented excellent briefs and excellent advocacy today. We appreciate it.